NO. 25-9517

## UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

**In the Matter of**

**Eric Chibueze Nwaubani,**

**Respondent,**

## BRIEF OF PROSECUTING COUNSEL APPOINTED
## PURSUANT TO LOCAL RULE 46(g)(10)

### DISCLOSURE STATEMENT

By Order dated June 23, 2025, this Court appointed Hamilton P. Fox, III, the Disciplinary Counsel for the District of Columbia, and a member of the Bar of this Court, to prosecute this disciplinary matter, pursuant to Local Rule 46(g)(10). The D. C. Office of Disciplinary Counsel, an arm of the District of Columbia Court of Appeals, is not a party to this matter.

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ..............................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ......................................2

STATEMENT OF THE CASE...................................................................3

SUMMARY OF ARGUMENT.................................................................8

ARGUMENT ...................................................................................10

  A.  THE STANDARD OF PROOF IS CLEAR AND CONVINCING
EVIDENCE. ....................................................................................10

  B.  MR. NWAUBANI VIOLATED RULE 8.4(d) OF THE DISTRICT OF
COLUMBIA'S RULES OF PROFESSIONAL CONDUCT BY ENGAGING IN
CONDUCT THAT SERIOUSLY INTERFERED WITH THE
ADMINISTRATION OF JUSTICE. ..................................................11

    1.  D.C. Rule 8.4(d)-Conduct that Substantially Interferes with the
Administration of Justice ...............................................................11

    2.  Citing *Jackson* instead of *Darden* ..............................................13

    3.  The Citations to *Glencore* and *Acres Properties*.........................14

    4.  Effect on a Judicial Proceeding.....................................................17

  C.  THERE IS NO MERIT TO MR. NWAUBANI'S CLAIM THAT HE HAS
BEEN DENIED NOTICE OF THE CONDUCT THAT WAS ALLEGEDLY
IMPROPER AND THE OPPORTUNITY TO RESPOND. ...............................19

  D.  THERE IS NO CLEAR AND CONVINCING EVIDENCE OF OTHER
VIOLATIONS OF THE D.C. RULES OF PROFESSIONAL CONDUCT.........21

  E.  THE COURT SHOULD IMPOSE A SANCTION OF REPRIMAND OR
PUBLIC ADMONITION. ...................................................................24

STATEMENT REGARDING ORAL ARGUMENT.............................................28

CONCLUSION ....................................................................................28

# TABLE OF AUTHORITIES

## Cases

*In re Anderson*, 778 A.2d 330 (D.C. 2001)............................................................23

*In re Bailey,* 283 A.3d 1199 (D.C. 2022) ...........................................................12

*In re Cole*, 967 A.2d 1264 (D.C. 2009)...............................................................18

*Dilley v. Holiday Acres Props. Inc.,* No. 16-CV-91-JDP, 2017 WL 2371295, at *3
   (W.D. Wis. May 31, 2017).............................................................................8, 15

*Dilley v. Holiday Acres Props. Inc.*, 905 F.3d 508 (7th Cir. 2018) ........................ 8

*In re Dobbie,* 305 A.3d 780 (D.C. 2023) .............................................................18

*In re Evans*, 834 F.2d 90 (4th Cir. 1987)..............................................................21

*In re Finkelstein*, 901 F.2d 1560 (11th Cir. 1990).................................................11

*In re Girardi*, 611 F.3d 1027 (9th Cir. 2010) .......................................................11

*Grant v. City of Long Beach*, 96 F.4th 1255, 1256 (9th Cir. 2024).........................27

*In re Hopkins,* 677 A.2d 55 (D.C. 1996)...............................................................12

*In re Hutchinson,* 534 A.2d 919 (D.C. 1987) (en banc) .........................................25

*In re Lattimer*, 223 A.3d 437 (D.C. 2020) ..................................................10, 23, 26

*In re Liotti*, 667 F.3d 419, 430-31 (4th Cir. 2011)............................................ passim

*In re Mann*, 311 F.3d 788, 790 (7th Cir. 2002) .....................................................11

*In re Martin*, 67 A.3d 1032 (D.C. 2013)...............................................................25

*Mavy v. Comm'r of the Soc. Sec. Admin.*, No. CV-25-00689-PHX, 2025 WL
   2355222 (D. Ariz. Aug. 14, 2025).................................................................27

*Nat'l Union Fire Ins. Co. of Pittsburg, Pa. v. Alticor, Inc.,* 466 F.3d 456, 459 (6th
   Cir. 2006)......................................................................................................11

*Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318 (1992) ........................ passim

*Park v. Kim*, 91 F.4th 610 (2nd Cir. 2024) ............................................................26

*Resolution Trust Corp. v. Bright,* 6 F.3d 336 (5th Cir. 1993)..................................11

*Roberts v. Acres*, 495 F.2d 57 (7th Cir. 1974)......................................................8, 16

*Sansotta v. Town of Nags Head*, 724 F.3d 533 (4th Cir. 2013)...............................21

*In re Romansky,* 938 A.2d 733 (D.C. 2007)...........................................................23

*In re Sibanda,* 24-BG-0690, 2025 WL 2413851 (D.C. Aug. 21, 2025) .................26

*In re Snyder*, 472 U.S. 634 & n.6 (1985)...............................................................11

*In re Tun*, 286 A.3d 538 (D.C. 2022) ....................................................................24

*In re Yelverton,* 105 A.3d 413 (D.C. 2014) ......................................................18, 24

*United States v. Hayes,* 763 F.Supp.3d 1054 (E.D. Cal 2025)...............................27

*United States v. Shaffer Equipment Co.*, 11 F.3d 450, 461 (1993) .........................25

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, (2010)........................21

*Wrighten v. United States*, 550 F.2d 990 (4th Cir. 1977) .......................................21

**Other Authorities**

42 U.S.C. § 1983 ..................................................................................16

Debra Cassens Weiss, *Who or What is to Blame for 2 Federal Judge's Error Filled Withdrawn Opinions,* ABA J., (Aug. 7, 2025), https://www.abajournal.com/web/article/who-or-what-is-to-blame-for-2-federal-judges-error-filled-withdrawn-opinions ..........................................................22

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* ......................3

**Rules**

D.C. Rule of Professional Conduct 3.3(a) ........................................... 22, 23

D. C. Rule of Professional Conduct 8.4(c) ...........................................23

D. C. Rule of Professional Conduct 8.4(d) ...................................... passim

D.C. Bar R. XI, § 9(h)(1) ......................................................................26

Fourth Circuit Local R. 46(g) ............................................................. passim

Fourth Circuit Local R. 46(g)(1)(c) ......................................................10

Fourth Circuit Local R. 46(g)(1)(d) ........................................2, 9, 11, 28

Fed. R. Civ. P. 1 ............................................................................. 20, 22, 24

Fed. R. Civ. P. 11 ........................................................................... 19, 27

Fed. R. App. P. 28 (b)(4) ...................................................................10

## JURISDICTIONAL STATEMENT

This brief adopts the Jurisdictional Statement of Respondent.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Respondent filed three briefs in the underlying matter citing non-existent cases.  He claims that these were the result of mis-citation or similar careless errors, but in large measure, the cases that Respondent says he meant to cite do not support the proposition for which they were cited.  Does this constitute conduct that seriously interferes with the administration of justice, in violation of D.C. Rule of Professional Conduct 8.4(d) and Local Rule 46(g)(1)(c), or conduct unbecoming a member of the bar of this Court, in violation of Local Rule 46(g)(1)(d)?

2.      When Respondent has clearly manifested that he understood the nature of the allegations against him before the initiation of disciplinary proceedings. and when, thereafter, he is given a full opportunity to address those allegations, has he been deprived of notice and the opportunity to respond?

3.      What is the appropriate sanction for Respondent's misconduct?

## STATEMENT OF THE CASE

Respondent Eric Nwaubani is a member of the Bar of this Court.  He is also a member of the Bar of the District of Columbia Court of Appeals, having been admitted on January 11, 2013. His principal office is in the District of Columbia. Mr. Nwaubani represented Harry A. Bolden in an appeal to the United States Court of Appeals for the Fourth Circuit arising from a grant of summary judgment against Mr. Bolden by the United States District Court for the District of Maryland.

On April 1, 2024, Mr. Nwaubani filed the Opening Brief of Appellant in this Court on behalf of Mr. Bolden.  JA 1-54.  In that brief, Mr. Nwaubani cited a non-existent case, *Nationwide Mutual Ins. Co. v. Jackson*, 548 U.S. 629 (2006) (hereinafter "*Jackson*"), to support a statement that Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, does not apply to temporary workers.  He further cited *Jackson*, a supposed Supreme Court opinion, in support of a list of factors that "the Fourth Circuit" has taken into consideration to determine whether an individual is an employee.  This was in support of an argument that summary judgment was inappropriate because there were factual issues in the case that were unresolved, including whether Mr. Bolden qualified as an employee, as opposed to being a temporary worker to whom Title VII might not apply.  JA 49-50. It is unclear how this issue might have benefited Mr. Bolden's case.  If it were determined that Mr. Bolden was not an employee within the meaning of Title VII, there would have been

no subject matter jurisdiction in the district court, and the case would have been dismissed. If there was subject matter jurisdiction, but summary judgement was otherwise properly granted, the issue would have been moot.

Following the filing of Appellee's Brief, Mr. Nwaubani filed a Reply Brief on June 14, 2024 (JA 55-78). The Reply Brief did not cite *Jackson,* but it cited two other non-existent cases, *Commodity Futures Trading Commission v. Glencore, Ltd.*, 611 F.3d 1330 (Fed. Cir. 2010) (hereinafter "*Glencore*"), and *In re Acres Properties, Inc.,* 100 F.3d 1307 (7th Cir. 1996) (hereinafter "*Acres Properties*"). The brief argued that there was evidence in the record to support a claim that when Mr. Bolden filed his administrative complaint before the Maryland Commission on Civil Rights, his failure to name Baltimore Gas and Electric Co. as a respondent was excusable because Mr. Bolden and the intake officer who assisted him in filing the complaint had no legal expertise. The *Glencore* and *Acres Properties* cases were cited with the signal, "*See.*" JA 67.

On February 14, 2025, this Court entered an Order noting that Mr. Nwaubani's "brief" (it did not specify Opening or Reply or both) may have been written with the use of artificial intelligence. JA 79. The use of AI may have led to "inapt argument and, more egregiously, to the citation of *a* nonexistent case" (emphasis added). The Court directed Mr. Nwaubani to file a revised brief and ordered him to show cause why he should not be sanctioned.

4

Shortly thereafter, on February 20, 2025, Mr. Nwaubani filed a revised Opening Brief (although the cover of the brief does not indicate that it is revised). JA 87-136.  In that brief, Mr. Nwaubani deleted the citation to *Jackson* and eliminated the argument concerning Mr. Bolden's status as a temporary worker and the possibility that there was no Title VII jurisdiction over his claim.

The February 14 Order had also permitted the defendant-appellee to file a revised brief, and it did so on February 27, 2025.  This brief added a claim that the argument in the original Opening Brief (omitted in the revised Opening Brief), concerning Mr. Bolden's status as a temporary worker, was an admission that he was not an employee and thus could not invoke Title VII jurisdiction.  Rev. Br. Appellee 19-20.

After filing his revised Opening Brief, Mr. Nwaubani formally responded to the Show Cause Order on March 2, 2025.  JA 81-86.  He stated that he had mistakenly cited *Jackson* and that he meant to cite *Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318 (1992) (hereinafter "*Darden*"), which was relevant to the issue of when an employment relationship existed, a factual issue that needed to be resolved at a trial and that was not suitable for summary judgment. As noted above, this argument was deleted from the revised Opening Brief, and neither *Darden* nor *Jackson* were cited in that brief.  Mr. Nwaubani's Response did not discuss the

*Glencore* or *Acres Properties* cases, but the Court's February 14 Order had mentioned only "a nonexistent case" and had not specified what that case was.

Mr. Nwaubani also filed a Revised Reply Brief on March 1.  Like the first Reply Brief, it did not cite *Jackson.*  Nor did it cite *Darden.*  It continued to cite the nonexistent *Glencore* and *Acres Properties* cases.  JA 138-150.  It also responded to the new claim in the Revised Brief of Defendant-Appellee that the argument in the initial Opening Brief about temporary worker status was an admission that there was no Title VII jurisdiction.  JA 155-157.

Oral argument was held on March 14, 2025.  A subsequent Order from this Court suggests that the issue of citation to nonexistent cases was discussed at this argument.  *See* Supplemental Notice to Show Cause at JA 162; Resp't Opening Br. at 4.  (It was not apparent that the oral argument might be relevant to his proceeding until Respondent alleged lack of notice in his Opening Brief on the disciplinary issue.  The undersigned counsel did not participate in the underlying proceedings and did not perceive the potential relevance of the oral argument, for which no transcript had been prepared, until receiving Mr. Nwaubani's brief raising issues relating to notice and due process.  Efforts have begun to have a transcript prepared, but it does not appear that one can be prepared before the deadline for this brief.  The Court should consider it as part of the record.  As discussed in the Argument section, however, the notice/due process argument fails even in the absence of evidence that

Respondent was put on notice of the issue as to citation of additional nonexistent cases at the oral argument. There is therefore no reason to extend this proceeding while the transcript is prepared.)

Shortly after the argument, on March 31, 2025, the Court issued a Supplemental Notice to Show Cause. JA 161-163. The Supplemental Notice referred to three cases cited by Mr. Nwaubani's briefs that did not exist: *Darden, Glencore, and Acres Properties.* Actually, Mr. Nwaubani's brief had not cited *Darden* (which does exist)*, but *Jackson* (which does not)*, and only in his original Opening Brief; he argued in his Response to the Motion to Show Cause that he meant to cite to *Darden*, and that Response appears to be the only citation to that case that proceeded the Supplemental Notice. It appears, therefore, that the Supplemental Notice mistakenly referred to *Darden* when it should have referred to *Jackson.* While the Supplemental Notice refers to "a brief." *Jackson* was cited in the original Opening Brief, whereas *Glencore* and *Acres Properties* were cited in the Reply Brief and the Revised Reply Brief. These discrepancies are noted because Mr. Nwaubani relies on them in his notice/due process argument.

Mr. Nwaubani complied with the Supplemental Notice in a pleading filed on April 16, 2025. JA 164-243. He stated that the citation to *Jackson* in his original Opening Brief was simply a mistake and that he meant to cite *Darden*. JA 166. With respect to *Glencore,* he stated that he meant to cite to an administrative proceeding

before the Commodity Futures Trading Commission, not a (nonexistent) Federal Circuit opinion. JA 167-168. As to *Acres Properties*, he conceded that this was a nonexistent case but stated that he researched two Seventh Circuit cases with "Acres" in their names; *Dilley v. Holiday Acres Props. Inc.,* No. 16-CV-91-JDP, 2017 WL 2371295, at *3 (W.D. Wis. May 31, 2017) , and *Roberts v. Acres*, 495 F.2d 57 (7th Cir. 1974). JA 169-170. Copies of these cases were attached to the Response. (It appears that Mr. Nwaubani's citation to the district court opinion in *Dilley* in the body of his Response was in error. The opinion he attached to his Response is from the Seventh Circuit 905 F.3d 508 (7th Cir. 2018),, although it was an appeal from Western District of Wisconsin decided in the calendar year after the cited district court opinion he cited in his second response to the Court.) He denied relying on AI and said that before filing his various briefs, he had reviewed all the cases that he had meant to cite.

On June 23, 2025, the Court ordered that briefing and oral argument be scheduled to address conduct that may have violated the applicable ethical rules. It appointed the undersigned to prosecute the disciplinary matter.

## SUMMARY OF ARGUMENT

Respondent Eric Nwaubani filed an Opening Brief in an appeal before this Court in which he cited a non-existent case. After a first show-cause order, he filed a revised Opening Brief, deleting the citation and the argument that he said it was

intended to support.  His response to the show-cause order cited to a case with the same appellant but a different appellee, which he said that he meant to cite.  The case had marginal relationship to the proposition for which he cited it.  The Court then discovered two other citations to nonexistent cases in the Reply Brief and Revised Reply Brief that Mr. Nwaubani had filed and issued a second show-cause order.  Mr. Nwaubani responded that these citations were also mistakes and produced the cases that he said that he meant to cite.  These cases, however, were irrelevant to the issues before the Court in the underlying matter and did not support the propositions for which Mr. Nwaubani said he meant to cite them.

Under Local Rule 46(g)(1)(c), members of the bar of this Court are required to adhere to the ethical rules of the jurisdictions in which their principal office is located, in Mr. Nwaubani's case the District of Columbia.  Mr. Nwaubani's conduct violated D. C. Rule of Professional Conduct 8.4(d), conduct which substantially interferes with the administration of justice.  His conduct was improper, it directly affected a case before this Court, and by wasting judicial resources, it tainted the judicial process.  This misconduct also violated Local Rule 46(g)(1)(d), conduct unbecoming a member of the bar of this Court.

Mr. Nwaubani claims that because of some minor errors in the Court's orders—referring to false citations in a brief, when it was actually in three briefs, and citing the wrong case as nonexistent—he was not provided with adequate notice

of the allegations to which he needed to respond.  But his argument assumes that the Court has already decided the issue against him when the Court has done nothing more than order briefing and oral argument on the issue of whether there is a disciplinary violation.  Mr. Nwaubani's pleadings demonstrate that he is fully aware of the allegations to which he must respond, and he has responded to them.  There is no deprivation of due process.

Multiple citations to nonexistent cases is sanctionable conduct, particularly when Mr. Nwaubani claims he meant to cite to cases that do not support the proposition for which he says he meant to cite them and when, despite the Court encouraging him to do so, he has provided no meaningful explanation for how this occurred.  The appropriate sanction is reprimand or public admonition.

## ARGUMENT

### A. THE STANDARD OF PROOF IS CLEAR AND CONVINCING EVIDENCE.

Appellate briefs normally address the standard of review.  *See* Fed. R. App. P. 28 (b)(4).  This, however, is an original matter, arising from indicia of misconduct that occurred before the Court of Appeals during briefing.  At issue therefore is the standard of proof, not the standard of review. The standard of proof is clear and convincing evidence.  *See In re Liotti*, 667 F.3d 419, 426 (4th Cir. 2011).  To the extent that the standard for the jurisdiction in which Mr. Nwaubani maintains his principal office is relevant (Local R. 46(g)(1)(c)), the standard in the District of

Columbia is also clear and convincing evidence. *See In re Lattimer*, 223 A.3d 437, 439 (D.C. 2020).

**B. MR. NWAUBANI VIOLATED RULE 8.4(d) OF THE DISTRICT OF COLUMBIA'S RULES OF PROFESSIONAL CONDUCT BY ENGAGING IN CONDUCT THAT SERIOUSLY INTERFERED WITH THE ADMINISTRATION OF JUSTICE.**

Pursuant to Local Rule 46(g)(1)(c), a member of the Bar of the United States Court of Appeals for the Fourth Circuit may be disciplined if he violates the rules of professional conduct in the jurisdiction for which he maintains his principal office. Mr. Nwaubani's principal office is in the District of Columbia. *See* JA 1 (1629 K Street, N.W., Washington, D.C. 20006). Rule 46(g)(1)(d) provides that a member of the Fourth Circuit Bar may also be disciplined for "[a]ny other conduct unbecoming a member of the bar of this Court." Similar language has generally been interpreted to mean violations of the ethical code of the licensing authority of the lawyer's home jurisdiction. *See In re Snyder*, 472 U.S. 634, 645 & n.6 (1985); *In re Girardi*, 611 F.3d 1027, 1035 (9th Cir. 2010); *Nat'l Union Fire Ins. Co. of Pittsburg, Pa. v. Alticor, Inc.,* 466 F.3d 456, 459 (6th Cir. 2006), *vacated in part on other grounds*, 472 F.3d 436 (6th Cir. 2007); *In re Mann*, 311 F.3d 788, 790 (7th Cir. 2002); *Resolution Trust Corp. v. Bright,* 6 F.3d 336, 341 (5th Cir. 1993); *In re Finkelstein*, 901 F.2d 1560, 1564 (11th Cir. 1990).

**1. D.C. Rule 8.4(d)-Conduct that Substantially Interferes with the Administration of Justice**

D.C. Rule of Professional Conduct 8.4(d) provides, "It is professional misconduct for a lawyer to . . . engage in conduct that seriously interferes with the administration of justice . . . ."  As interpreted by the District of Columbia Court of Appeals, this rule is not as broad as it might sound upon initial reading.  A violation generally requires proof of three elements: (1) that the conduct was improper; (2) that it bore directly on the judicial process with respect to an identifiable case or tribunal; and (3) that it tainted the process in more than a *de minimis* way.  *In re Hopkins,* 677 A.2d 55, 60-61 (D.C. 1996).  The second element is clearly established here; Mr. Nwaubani's conduct bore directly on the litigation of the *Bolden* appeal before this Court.

The Court should find clear and convincing evidence that Mr. Nwaubani's conduct, taken as a whole, was improper. Improper conduct means that the lawyer "must either take improper action or fail to take action when, under the circumstances, he or she should act.  *Hopkins* at 61.  This can include careless conduct such as omitting subpoenaed materials from a document production.  *In re Bailey,* 283 A.3d. 1199, 1209-1210 (D.C. 2022).  Mr. Nwaubani's Response to the Supplemental Motion to Show Cause and his Opening Brief argue that this was simply a matter of citing the wrong cases—something akin to a cite-checking error that many lawyers might make.  But failure to cite check does not explain the vast discrepancies between the citations Mr. Nwaubani included in his briefs and the

correct citations of the cases he claims he intended to cite. Nor does it explain the complete disconnect in at least two instances between the cases he claims he intended to cite and the proposition for which he meant to cite them.

### 2.    Citing *Jackson* instead of *Darden*

His explanation is most plausible when he contends that he mistakenly cited *Jackson* in his Opening Brief when he intended to cite *Darden.* In those two cases, the name of the appellant is the same, so there is the possibility of confusion. But he first cited *Jackson* to support a statement that "Title VII only applies to employees and not temporary workers." He provided no specific page reference for this claim. JA 49. *Darden,* which he says he meant to cite, is an ERISA case, and does not discuss the ambit of Title VII, so it appears irrelevant to the first point Mr. Nwaubani cited it for. He further cited *Jackson* (without a specific page reference) as listing factors to be considered in determining whether someone was an "employee" under the protection of Title VII. JA 49-50. *Darden* does discuss the common-law test for what constitutes an employee under ERISA. JA 196-197 (503 U.S at 323-24). While the match-up between the propositions for which Mr. Nwaubani's Opening brief cited *Jackson*, assuming he meant *Darden,* is not exact, a citation of *Darden* could generally support Mr. Nwaubani's assertion of what factors must be considered in determining whether someone is an "employee." At no place, however, does Mr. Nwaubani offer a plausible explanation of how, if he meant to cite *Darden,* he cited

to 548 U.S. 629 (2006) when *Darden* is found at 503 U.S. 318 (1992). That is not a simple typo. He denies that he relied on AI, and, in the absence of an evidentiary hearing, there is no evidence in this record to refute him. But he did not "explain the research process that led him to the subject citations . . .", as this Court "encouraged" him to do in its Supplemental Notice to Show Cause. JA 163.

### 3.    The Citations to *Glencore* and *Acres Properties*

Taken by itself the *Jackson/Darden* discrepancies might not constitute sufficient improper conduct to support a Rule 8.4(d) violation, but the two other citations to nonexistent cases in the reply briefs cannot possibly be explained as cite-checking errors. In both instances, Mr. Nwaubani cited cases that did not exist. Nor do the cases that he claimed he meant to cite support the propositions for which he says he intended to cite them.

He cited both *Glencore* and *Acres Properties* to support a claim that, "The fact that Plaintiff [Mr. Bolden] and the intake officer did not have any legal expertise at the time of completing the administrative process is relevant to assessing" whether Mr. Bolden made a reasonable effort to ascertain whether Baltimore Gas and Electric Co. should have been named a respondent in the administrative complaint. (This was by way of explaining why he should have been permitted to sue BG&E despite not having exhausted administrative remedies.) JA 67, JA 148. The *Glencore* citation is to a nonexistent Federal Circuit case. There is a CFTC

administrative order imposing sanctions on a company called Glencore, but the citation is not even close to the one Mr. Nwaubani provided in his two reply briefs. *See* JA 202.  Moreover, the administrative order has nothing to do with exhaustion of remedies or excuses for failing to name a respondent in an administrative proceeding.  The order is a negotiated disposition of a complicated investigation of Glencore for engaging in a scheme to manipulate oil markets, which resulted in a settlement of hundreds of millions of dollars.  JA 202-223.  Mr. Nwaubani does not cite a particular part of this complex order as relevant to the Bolden case.  Nor did he explain how this case is relevant; he simply asserts that it is.  Resp't Opening Br. 23.

Equally puzzling is the citation to *Acres Properties*.  Again, there is no citation to a particular part of the opinion, which would have been an impossibility since this case seems to be completely made up.  Mr. Nwaubani's argument boils down to speculation that he might have intended to cite one of two other Seventh Circuit cases that he claims to have researched.  But neither case supports the proposition for which it was cited in the reply briefs.  *Dilley v. Holiday Acres Properties, Inc.*, was a combined appeal of two personal injury cases, brought in federal court because of diversity of citizenship, in which the legal issue was the application of a Wisconsin statute limiting liability for horseback riding injuries.  The Seventh Circuit affirmed the district courts' rulings that the statute barred the claims.  JA 224-238.  Mr.

Nwaubani alleges that *Dilley* is relevant because summary judgment was imposed when the plaintiffs tried to hold employers liable for the acts of employees, which sounds suspiciously like the well-established doctrine of *respondeat superior*. Resp't Opening Br. 24. But *Dilley* held there was no such liability, albeit under the specific facts of the cases under review and in the context of Wisconsin's "equine-immunity statute."

The other "*Acres*" case, *Roberts v. Acres*, 495 F.2d 57 (7th Cir. 1974), also lacks any relevancy to the *Bolden* appeal. It was an appeal from a dismissal of a 42 U.S.C. § 1983 action against a municipality and a policeman who shot the plaintiff estate's decedent. The court affirmed with respect to the municipality but reversed the dismissal of the case against the policeman. JA 239-243. Mr. Nwaubani argues that the case "references the court's observation that deficiencies in a complaint may result from draftsmanship by a layman." Resp't Opening Br. 10. This is a considerable stretch. The *Roberts* opinion noted that the policeman, in support of the district court's entry of summary judgment against the plaintiff, had cited a number of cases where complaints were dismissed. The court characterized these citations as exemplifying "to the extreme the deficiencies a complaint may possess." One of the cited deficiencies was "draftsmanship by a layman." JA 242-243. In short, the court was making the point that the policeman's argument relied on some extreme situations, not present in the case at bar. The court held these cases to be

inapposite and of little precedential value. The same observation applies to the application of *Roberts* to the *Bolden* appeal.

### 4.    Effect on a Judicial Proceeding

In sum, Mr. Nwaubani cited three cases where the citations bore no resemblance to the citations of the cases that he (may) have meant to cite. There was no transposing of numbers, *e.g., "*350" for "305", or similar typographical error. *Compare:*

| | |
|---|---|
| *Jackson*, **548** U.S. **629 (2006)** | *Darden,* **503** U.S. **318 (1992)** |
| *Glencore,* **611 F.3d 1330 (Fed. Cir. 2010)** | *Glencore* **CFTC Docket No. 22-16** |
| *Acres Properties,* **100** F.3d **1307** (7th Cir. **1996)** | *Dilley,* **905** F.3d **508** (7th Cir. **2018)** |
| | *Roberts,* **495** F.2d **57** (7th Cir. **1974)** |

Plus, with the possible exception of the second citation of *Jackson/Darden*, none of the cases supported the propositions for which they were cited. Including in briefs citations to nonexistent cases, whether generated by AI, an incompetent legal assistant, or otherwise, and then seeking to excuse these citations by claiming an intent to cite other inapposite cases is improper conduct. Courts need to rely on the integrity of the citations that lawyers provide them without having to doublecheck each one.

This improper conduct had more than a *de minimis* effect on the *Bolden* appeal. As a result of Mr. Nwaubani's conduct, the Court issued a show cause Order

resulting in Mr. Nwaubani's initial Response, which the Court had to review, and his revised Brief, which the Court also had to review. The revised Brief resulted in a Revised Brief from the defendant-appellee, followed by a Revised Reply Brief from Mr. Nwaubani, both of which the Court had to review. This was followed by the Court's Supplemental Notice to Show Cause, resulting in turn in another Response from Mr. Nwaubani. Ultimately, the Court docketed this separate disciplinary proceeding, appointed the undersigned as counsel to prosecute the matter, and will have to review the briefing and oral argument, if any, before resolving this disciplinary matter. This unnecessary complication of the *Bolden* appeal and the concomitant disciplinary case—an entire new proceeding—are a substantial impingement on the Court's time that wastes judicial resources and taints the judicial process in more than a *de minimis* way. *See In re Dobbie,* 305 A.3d 780, (D.C. 2023); *In re Yelverton,* 105 A.3d 413 (D.C. 2014); *In re Cole*, 967 A.2d 1264 (D.C. 2009).

Mr. Nwaubani asserts repeatedly throughout his brief that he did not "rely on any of the erroneous citations to advance legal arguments or to support facts beyond those already established in the underlying case." *See, e.g.* Resp't Opening Br. 6. It is unclear precisely what this means. If it means that the mis-citations were in support of subordinate arguments, he is correct. This brief cites this fact as a reason why he has not committed other disciplinary violations, discussed in the next section of this Argument. But regardless of the importance of the arguments in support of

which the cases were improperly cited, without question they seriously interfered with the administration of justice, as the existence of these very proceedings demonstrates.

Accordingly, the Court should find that Mr. Nwaubani has substantially interfered with the administration of justice, in violation of D.C. Rule of Professional Conduct 8.4(d).  This is also conduct unbecoming a member of the bar of this Court.

### C. THERE IS NO MERIT TO MR. NWAUBANI'S CLAIM THAT HE HAS BEEN DENIED NOTICE OF THE CONDUCT THAT WAS ALLEGEDLY IMPROPER AND THE OPPORTUNITY TO RESPOND.

Mr. Nwaubani complains of imprecision in the Order to show cause and the Supplemental Notice to Show Cause as failing to provide him with adequate notice of the charges against him.  The initial Order referred only to his citation of a nonexistent case, presumably meaning *Jackson,* and not to nonexistent **cases,** specifically not to those cited in the reply briefs.  The Supplemental Notice suggests that all the faulty citations were contained in one brief, as opposed to in both the Opening Brief and the reply briefs, and mistakenly refers to his citation in a brief of *Darden*—which he cited only in his Response to the Motion to Show Cause—when it actually meant *Jackson.* These imprecise references by the Court in its orders are the basis for Mr. Nwaubani's claim of lack of notice.

Mr. Nwaubani's argument presumes that this disciplinary proceeding arises from the enforcement of Rule 11, Fed. R. Civ. P., and that a sanction has already

been imposed without giving him clear notice of what conduct is at issue. First, Rule 11 governs proceedings before the United States District Courts. Rule 1, Fed. R. Civ. P. ("These rules govern the procedures in all civil actions and proceedings in the United States district courts. . . ."). This matter originated in the Court of Appeals pursuant to Rule 46(c), Fed. R. App. P., and Local Rule 46(g). Second, no discipline or sanction has yet been imposed. The two show cause orders, of whose precision Mr. Nwaubani complains, only resulted in this proceeding—a proceeding to determine whether any discipline should be imposed. The on-going process of briefing and arguing these issues affords Mr. Nwaubani notice of the allegations against him and the opportunity to contest them.

The mistakes of which Mr. Nwaubani complains—using the singular "brief" instead of "briefs" and referring to *Darden* instead of *Jackson*—did not deprive him of adequate notice. As his Response to the Supplemental Notice to Show Cause demonstrates, Mr. Nwaubani fully understands that at issue are his citations to three nonexistent cases. In the Original Brief, he cited *Jackson*. The Court discovered that there was no such case, issued the Motion to Show Cause, and gave him the opportunity to explain that he meant to cite *Darden*, a real case. In preparing for the argument, the Court realized that in his reply briefs, Mr. Nwaubani had again cited two nonexistent cases, *Glencore* and *Acres Properties*. The panel apparently discussed these citations at the oral argument (*see S*upplemental Notice to Show

20

Cause—JA 162) and issued its supplemental Order giving him an opportunity to explain. His Response to the Order shows that he fully understood the issue; he even attached copies of the cases that he said he meant to cite. And the Court has as yet imposed no sanction.

The Court then ordered these disciplinary proceedings and afforded Mr. Nwaubani another opportunity to address the allegations of citing nonexistent cases. He fully availed himself of the opportunity to do so by filing a 30-page Opening Brief, and, following receipt of this brief, he will have the opportunity to file a reply brief. Although he suggests in his Opening Brief that oral argument is unnecessary, he has certainly been afforded the opportunity to further respond to the allegations at oral argument. The only conduct at issue is the citation to three nonexistent cases, and Mr. Nwaubani's pleadings demonstrate that he fully understands that. He has thus being given ample notice of the allegations against him and a full opportunity to respond. *See In re Ruffalo*, 390 U.S. 544 (1968); *United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260, (2010); *In re Evans*, 834 F.2d 90 (4th Cir. 1987), *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013); *Wrighten v. United States*, 550 F.2d 990, 991 (4th Cir. 1977) (citing *Selling v. Radford*, 243 U.S. 46, 51 (1917).

## D. THERE IS NO CLEAR AND CONVINCING EVIDENCE OF OTHER VIOLATIONS OF THE D.C. RULES OF PROFESSIONAL CONDUCT.

Mr. Nwaubani denies identifying these "opinions" via AI. While his explanation for how he obtained these citations is opaque, there is no evidence to refute his denial. Had there been an evidentiary hearing at which he testified and was subjected to cross-examination—pining down, for example, his access to and practice with respect to the use of AI—the record might be different, but as it stands, his denial of the use of AI is unrefuted. But the source of the nonexistent cases is not dispositive. Both the Judicial Conference and the American Bar Association are currently considering the issue as to whether special specific rules need to be adopted concerning the use of AI. Debra Cassens Weiss, *Who or What is to Blame for 2 Federal Judges Error Filled Withdrawn Opinions,* ABA J., (Aug. 7, 2025), https://www.abajournal.com/web/article/who-or-what-is-to-blame-for-2-federal-judges-error-filled-withdrawn-opinions. In the absence of a specific rule governing the use of AI, it does not matter where the citations originated. The issue is whether those nonexistent citations violate the Rules of Professional Conduct.

**Rule 3.3(a) – Candor to Tribunal.** False statements to a tribunal implicate Rule 3.3(a), D.C. Rules of Professional Conduct, which prohibits making a false statement of law or fact to a tribunal. But Rule 3.3 requires that the lawyer do so "knowingly," which denotes "actual knowledge of the fact in question." D.C. Rule 1.0(f). There is no evidence that Mr. Nwaubani knew that the citations he provided the Court were false. The points for which he cited the cases were minor, subordinate

arguments, for which there was little or no motive to fabricate. *Jackson* was cited for the factors to be assessed in determining whether an individual was an employee, for which there was undoubtedly other case law available. The citation was in support of a secondary, not to say far-fetched, argument that Mr. Nwaubani abandoned in his revised Opening Brief. *Glencore* and *Acres Properties* were cited for another secondary argument, an attempt to explain the failure to exhaust remedies by blaming it on the lack of expertise of the drafter. It is improbable that any lawyer would have knowingly made up a citation for this purpose, and even were there evidence that Mr. Nwaubani relied on AI, that would still not constitute the "knowing," as opposed to negligent, making of a false statement.

**Rule 8.4(c) – Conduct Involving Dishonesty.** D.C. Rule 8.4(c) prohibits "conduct involving dishonesty, fraud, deceit, or misrepresentation." As with Rule 3.3(a) there is no evidence that Mr. Nwaubani knowingly cited nonexistent cases, but in the District of Columbia, dishonesty or misrepresentation can be established by showing that the lawyer acted recklessly. *See In re Lattimer,* 223 A.3d 437, 451 (D.C. 2020). The standard for recklessness, however, requires clear and convincing evidence that the respondent "consciously disregarded the risk" that his statements were false or his conduct dishonest. *In re Anderson*, 778 A.2d 330, 339 (D.C. 2001). *See, e.g. In re Romansky,* 938 A.2d 733, 740-42 (D.C. 2007). But it is difficult, if not impossible to make this distinction on a record that lacks Mr. Nwaubani's

testimony.  There is no clear and convincing evidence that Mr. Nwaubani's conduct rose to the level of reckless dishonesty or misrepresentation.

**Rule 1.1 – Competence.**  On its face, citing nonexistent authorities seems inherently incompetent.  But in the District of Columbia, an essential element of a Rule 1.1 violation is harm to the client.  *In re Yelverton,* 105 A.3d at 421-423.  Here the client was not harmed, and because of the subordinate nature of the issues to which the citations were addressed, there seems to have been little possibility of such harm.

### E. THE COURT SHOULD IMPOSE A SANCTION OF REPRIMAND OR PUBLIC ADMONITION.

Whereas the law of the District of Columbia governs the standards of conduct, the determination as to the appropriate sanction ought to be a matter of discretion for this Court.  This Court was the "victim" of Mr. Nwaubani's misconduct since it was the Court's judicial resources that were unnecessarily expended as a result. Were the D.C. Court of Appeals applying the disciplinary rules of another jurisdiction pursuant its choice of law rule, it would nonetheless apply its own standards for determining sanction. *See In re Tun,* 286 A.3d 538, 543 (D.C. 2022).  .

While not binding, the factors considered in imposing sanction in D.C. are instructive.  The purpose is to protect the public and the courts, maintain the integrity of the legal profession, and deter Mr. Nwaubani and other lawyers from engaging in similar misconduct.  *In re Hutchinson,* 534 A.2d 919, 924 (D.C. 1987) (en banc).

The more limited jurisprudence of this Court is similar. *See In re Liotti*, 667 F.3d 419, 430-31 (citing American Bar Association Standards for Imposing Lawyer Sanctions). *Cf. United States v. Shaffer Equipment Co.*, 11 F.3d 450, 461 (1993) ("Due to the very nature of the [district] court as an institution, it must and does have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates.")

Relevant factors under D.C. law include: (1) the seriousness of the misconduct; (2) the prejudice, if any, to the client that resulted from the misconduct; (3) whether the conduct involved dishonesty; (4) the presence or absence of violations of other provisions of the disciplinary rules; (5) whether the lawyer has a previous disciplinary history; (6) whether the lawyer has acknowledged his wrongful conduct; and (7) the circumstances in mitigation or aggravation. *In re Martin*, 67 A.3d 1032, 1053 (2013). Except for factor #6, acknowledgement of misconduct, Mr. Nwaubani scores well on this matrix. His citation to nonexistent cases dealt with relatively minor points in his brief. His client was not prejudiced; any prejudice was the Court's. There is no proof of dishonesty or multiple rule violations. He has no disciplinary history, and there are no circumstances in aggravation, except perhaps his failure to acknowledge his misconduct. Mr. Nwaubani denies using AI but offers no coherent explanation for why he cited nonexistent cases or why the cases he claims he meant to cite do not support the proposition for which he says he

25

meant to cite them. As close as he comes is a statement that the briefs "were the product of rigorous research conducted using various open-source platforms." Resp't Opening Br. 22; *see id.* at 9-10, 25. It is not credible to believe that "rigorous" research resulted in the citation of three nonexistent cases or that Mr. Nwaubani could have concluded that at least two of the cases he says he meant to cite stood for the proposition for which they were supposed to be cited. Mr. Nwaubani's failure to offer a credible explanation for his misconduct weighs in favor of a more severe sanction. A lawyer who does not acknowledge obvious misconduct cannot be trusted not to repeat the misconduct in the future. *In re Lattimer,* 223 A.3d 437,456 (D.C. 2020); *In re Sibanda, 24-BG-0690, 2025 WL 2413851 (D.C. Aug. 21, 2025)*.

D.C. jurisprudence is also instructive in its goal of fitting square pegs into square holes: a sanction must not "foster a tendency toward inconsistent dispositions for comparable conduct . . . ." D.C. Bar R. XI, § 9(h)(1). But there is limited jurisprudence in the federal Courts of Appeals relating to comparable misconduct before appellate courts, perhaps because the nature of appellate practice limits the opportunities for garden variety ethical misconduct. *In re Liotti*, 667 F.3d 419 (4th Cir. 2011); *Park v. Kim,* 91 F.4th 610 (2nd Cir. 2024) (brief filed with the court included citation to fictitious cases and attorney admitted using AI); *Grant v. City of Long Beach*, 96 F.4th 1255, 1256 (9th Cir. 2024) (appellant's opening brief "replete with misrepresentations and fabricated case law" and was stricken by court). There

26

is more case law from the district courts applying Rule 11, but there seems to be little theme to the pudding. A recent order issued in a District of Arizona case, *Mavy v. Comm'r of the Soc. Sec. Admin.*, summarizes the Rule 11, decisions relating to "citation-related deficiencies, including those consistent with artificial intelligence." *Mavy*, No. CV-25-00689-PHX, 2025 WL 2355222 (D. Ariz. Aug. 14, 2025). As here, the respondent in that case denied using AI, but the court held "[c]iting nonexistent case law or misrepresenting the holdings of a case is making a false statement to a court. It does not matter if [generative AI] told you so." *Id*. at 5 (citing *United States v. Hayes,* 763 F.Supp.3d 1054, 1067 (E.D. Cal 2025)). After surveying the "burgeoning body of case law" exploring similar conduct, the Arizona District Court found that sanctions included monetary sanctions, striking filings, and referral to disciplinary authorities (or a combination thereof). *Mavy*, 2025 WL 2355222 at *6, *7.

Most of the case law arises from district court litigation under different circumstances. This Court has publicly admonished a lawyer who misrepresented facts in a brief, but for whom there were substantial factors in mitigation not present here, *e.g.,* representation of an indigent defendant, acknowledgement of the misconduct. *In re Liotti,* 667 F.3d at 430-31. *Liotti* relied in part on the American Bar Association Standards for Imposing Lawyer Sanctions. Those Standards suggest that a reprimand or admonition would be appropriate. ABA Standards, §§

6.13-6.14, 6.23-6.24. Comparable discipline would be appropriate here, although any admonition should be public; the goal of deterring others is not served by private admonitions.

## STATEMENT REGARDING ORAL ARGUMENT

Respondent has stated that he does not believe oral an argument is necessary. The undersigned has no "client" as such to consult with respect to this question. Accordingly, he defers to the Court as to whether it believes that oral argument would assist in the resolution of this matter.

## CONCLUSION

The Court should find that Respondent Eric Nwaubani violated Rule 8.4(d) of the District of Columbia Rules of Professional Conduct and engaged in conduct unbecoming a member of the bar of this Court, as prohibited by Local Rule 46(g)(1)(d). The Court should either publicly admonish him or reprimand him for his misconduct.

Respectfully Submitted,

/s/ *Hamilton P. Fox, III*

Hamilton P. Fox, III
Disciplinary Counsel


Office of Disciplinary Counsel
515 Fifth Street, NW
Room 117, Bldg. A
Washington, D.C. 20001

Telephone: (202) 638-1501
Email: foxp@dcodc.org
Appointed Prosecuting Counsel